UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 21-cr-41-JL-3 |
| | ) | |
| RENEE SPINELLA | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The defendant pled guilty to one count of wire fraud in connection with her participation in a bitcoin exchange business that catered to fraudsters. The business, run by co-defendant Ian Freeman, was designed to operate in violation of the Bank Secrecy Act, the law designed to prevent money laundering and to assist the tracking of proceeds of criminal activity. Freeman did not implement meaningful know-your-customer and anti-money laundering procedures and thereby allowed his customers to transact millions of dollars anonymously. In exchange for anonymity, Freeman's customers, many of them criminals, paid him fees far higher than those charged by lawful bitcoin exchanges. Freeman collected these fees and profited mightily.

The defendant assisted Freeman's business in three ways. First, she served as a "bitcoin assistant" to support Freeman's business.  (PSR 23).  In this role, the defendant sold bitcoin that was loaned to her from Freeman to "customers" on Localbitcoins.com.  In a two-year period, the defendant conducted more than 1,100 trades, totaling $1,170,557.  (PSR 23).  She then transitioned into the role of a "wiring agent."  In order to operate his business, Freeman needed access to bank accounts and virtual currency exchanges into which scam victims would wire him money or where he could purchase bitcoin to refresh his supply. Problems arose when banks and exchanges caught on to Freeman's scheme and closed his accounts and so Freeman hired others to open accounts in their names, and in the names of fraudulent churches, on his behalf.  As a

wiring agent, the defendant opened both bank accounts and virtual currency exchange accounts in his name and in the name of the "Crypto Church of New Hampshire" for Freeman's business. In total, the bank accounts she opened processed more than $1,000,000 in funds, much of it proceeds of criminal activity.  (PSR 26-27).[1]  Finally, the defendant worked as a "vending machine courier" whereby she would collect cash from Freeman's bitcoin ATM's and deposit the cash in accounts controlled by Freeman.

In short, the defendant was an integral part of Freeman's operation, and she directly participated in the day-to-day operation of the unlicensed money transmitting business as a "bitcoin assistant."  While the government has not alleged that the defendant was aware that many of the business's clients were fraud victims, her culpability is greater than that of the co-defendants who merely opened bank accounts.  As the PSR notes, the defendant was charged, among other things, with Conspiracy to Operate an Unlicensed Money Transmitting Business in violation of 18 U.S.C. §§ 371, 1960(a) & (b)(1)(B).  (PSR 90).  As noted, had the government proceeded on this charge, the evidence supports a guideline range that would have been substantially higher than the charge to which she pleaded guilty.[2]

Balanced against this conduct is the fact that the defendant took responsibility for her conduct and promptly pleaded guilty after participating in a reverse proffer with the government. Furthermore, as the defendant and the PSR note, there are mitigating factors, especially with

---

[1] In addition to the $488,630.16 in deposits identified in the PSR, the PSR notes two accounts opened by the defendant, a Digital Federal Credit Union account and a Bank of America account.  The probation officer noted that he had the records but did not receive a financial analysis reflecting which deposits were related to the money transmitting business.  The government proffers that if contested, it would produce evidence showing that both the DCU account and the Bank of America account were used nearly exclusively for Freeman's business.  The DCU account received $280,204 in deposits, including $197,885 from known fraud victims, while the BOA account received approximately $286,023 during the time period for which the government obtained records, much of which were the kind of branch deposits from around the country consistent with the defendant's business.

[2] The Guideline range for a defendant with Criminal History I, convicted of 18 U.S.C. § 1960(b)(1)(B), where the business involved greater than $9,500,000, and where the defendant received credit for acceptance of responsibility would likely be 46-57 months.

respect to the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. 3553(a)(1). The defendant moved in with Freeman when she was 16 years old, at which time Freeman was 33 years old. Chat messages reviewed by the government suggest that her romantic relationship with Freeman likely began when she was 15 years old. The defendant lived with Freeman until she was 19 years old. It is clear from the evidence that Freeman held significant sway over the defendant, and while it does not excuse her behavior, it does provide some mitigation in understanding how she became involved in Freeman's criminal enterprise. The defendant's pleading and the PSR outline several other relevant mitigating factors.

All of this is to say that the government agrees with the recommendation set forth by the defendant: a time-served sentence followed by a supervised release term of 3 years. The defendant has no criminal history, and while her involvement demonstrates that she willingly participated in the operation of the business, the evidence does not suggest that she was aware that the business was devoted to laundering money for fraudsters. She has taken responsibility for her conduct and pleaded guilty to a federal felony offense. The term of supervised release will provide supervision to ensure that she remains law-abiding and moves forward from this conduct. Additionally, the Court should impose a fine of $2,000. While the defendant's income is not significant, and she does have a court appointed attorney, the PSR indicates that she has the ability to pay. Considering the conduct, a fine is appropriate in this matter. Considering all of the factors set forth in 18 U.S.C. § 3553(a), a time served sentence, three years of supervised release, and a $2,000 fine is sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in § 3553(a)(2).

Respectfully Submitted,

JANE E. YOUNG
United States Attorney

/s/ John J. Kennedy
Assistant U.S. Attorney
NH Bar # 19557
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
603-225-1552
john.kennedy2@usdoj.gov

/s/ Seth R. Aframe
Bar MA 643288
Assistant U.S. Attorney
53 Pleasant Street, 4th Floor
Concord, NH  03301
(603) 225-1552
seth.aframe@usdoj.gov

/s/ Georgiana L. MacDonald
Assistant U.S. Attorney
MA Bar # 685375
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
603-225-1552
georgiana.macdonald@usdoj.gov

Date:  August 18, 2022